## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

WILLIE MOORE,

     Petitioner,

v.                             Case No.: 4:18-cv-333-MW-MJF

MARK S. INCH,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Willie Moore has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 18). Moore replied. (Doc. 20). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that Moore is not entitled to habeas relief.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background and Procedural History[2]

On March 28, 2013, Shavaughn Robinson (the victim) left her apartment at 8:30 a.m. to go to work. Robinson locked her doorknob lock, but not the deadbolt. At approximately 10:00 a.m., Sherita McCord, Robinson's neighbor, saw Moore park his vehicle in front of Robinson's apartment. Moore exited his vehicle, walked up to Robinson's apartment door, knocked, waited, looked around, and knocked again. When no one answered, Moore unlocked the door and entered the apartment. Moore left a short time later. When Robinson returned to her apartment at noon for lunch, McCord met her in the parking lot and told her what she observed. Robinson called the police. When Robinson went inside her apartment, she discovered that her television and digital camera were missing. McCord gave the police a detailed description of Moore and his vehicle. McCord identified Moore as the burglar from a photographic lineup and, later, in court. Moore was a former maintenance man at Robinson's apartment complex.

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 18, Attach. 1, Ex. B3 (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

Moore was charged in Leon County Circuit Court Case No. 2013-CF-1076 with burglary of a dwelling and grand theft. (Doc. 18, Attach. 1, Ex. B1 at 5).[3] A jury found Moore guilty of burglary as charged, but not guilty of theft. (*Id*. at 26-27). The trial court adjudicated Moore guilty of burglary of a dwelling and sentenced him to 108.75 months of imprisonment. (*Id*. at 31-39). The Florida First District Court of Appeal ("First DCA") affirmed without written opinion. *Moore v. State*, 156 So. 3d 1081 (Fla. 1st DCA 2014) (per curiam) (copy at Attach. 2, Ex. B7).

On December 9, 2015, Moore filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Attach. 2, Ex. C1 at 3-37). The state circuit court denied relief. (*Id*. at 41-80). The First DCA affirmed without written opinion. *Moore v. State*, 255 So. 3d 811 (Fla. 1st DCA 2017) (per curiam) (Table) (copy at Attach. 2, Ex. C4). The mandate issued July 2, 2018. (*Id*. at C5).

Moore filed his *pro se* federal habeas petition on June 28, 2018, raising four claims. (Doc. 1). The State asserts that two of Moore's claims are procedurally defaulted and that all are without merit. (Doc. 18).

---

[3] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 18). The citation refers to the electronic attachment number followed by the exhibit letter. If a page of an exhibit bears more than one page number, the undersigned cites the number appearing at the bottom right corner of the page.

## II.    Relevant Legal Principles

### A.    Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78.

A claim that was not properly exhausted in state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848; *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

**B.   Section 2254 Standard of Review**

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or

---

[4] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.  **Discussion**

**Ground One**      **"The Trial Court Fundamentally Erred in Commenting on Petitioner's Silence or Failure to Testify." (Doc. 1 at 6).**

This claim involves the trial court's use of the word "defendant" instead of "defense" when introducing the parties' closing arguments. The trial court told the jury:

> [A]t this time we'll being closing arguments. Both the State and the defendant have now, of course, rested their cases. The attorneys will now present their final arguments.
>
> Please remember what the attorneys say is not evidence. However, please listen closely to their arguments. They are intended to aid you in understanding the case. Each side will have equal time, but the State is entitled to divide this time between an opening argument and a rebuttal argument *after the defendant has spoken*.

(Attach. 1, Ex. B3 at 144) (challenged language italicized). Moore claims that the trial court's phraseology in the last sentence equated to a comment on his silence or failure to testify, in violation of his constitutional rights. (Doc. 1 at 6-7). Moore indicates that he exhausted this claim by presenting in his direct appeal and in his Rule 3.850 motion. (*Id*. at 6-8).

The State asserts a procedural default defense. The State maintains that although Moore challenged the trial court's comment on direct appeal, he raised it as a purely state law issue and not as a federal constitutional violation. (Doc. 18 at

7-10). Moore's failure to "fairly present" the state court with the federal constitutional nature of his claim renders it procedurally defaulted. (*Id*.). The State argues that even if Moore's federal constitutional claim were deemed properly exhausted, he still is not entitled to relief because he fails to meet § 2254(d)'s demanding standard. (*Id*. at 23-25).

### A.    Moore's Claim Is Procedurally Defaulted

"To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277-78. A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr*., 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'") (quoting *Kelley*, 377 F.3d at 1344-45). Courts apply "fair presentation" principles "with common sense and in light of the purpose underlying the exhaustion requirement—namely, giving the state courts 'a meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of*

*Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

"[A] petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015). A petitioner does so by, for example, "including in his claim before the state appellate court the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Lucas*, 682 F.3d at 1351 (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)); *see also Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (concluding that petitioner's federal claims were "fairly presented" where he provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

A petitioner does not satisfy the exhaustion requirement "merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.'" *Lucas*, 682 F.3d at 1352 (quoting *Kelley*, 377 F.3d at 1343-44). Similarly, "a petitioner cannot 'scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.

Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *French*, 790 F.3d at 1271 (quoting *Kelley*, 377 F.3d at 1345).

Although it is difficult to "pinpoint the minimum requirements that a habeas petitioner must meet in order to exhaust his remedies," *McNair*, 416 F.3d at 1302, it is clear that Moore's counseled direct appeal brief did not alert the state court to a federal law claim. Moore listed the issue presented for review as: "The Trial Court Fundamentally Erred In Commenting On Appellant's Silence Or Failure To Testify." (Attach. 2, Ex. B5 at i). Moore summarized his claim as follows:

> Comments on the defendant's silence or failure to testify are strictly prohibited in Florida. Any comment susceptible as being interpreted as such a comment is verboten. In the present case, the trial court made a comment which drew attention to appellant's failure to testify. Appellant contends this comment constitutes fundamental error requiring a new trial.

(*Id*. at 5).

The body of Moore's argument relied exclusively on state law. (*Id*. at ii, 6-8). Moore identified state law as the relevant standard for determining whether the trial court's terminology constituted a comment on Moore's silence. (*Id*. at 6 ("Florida has adopted a very liberal rule for determining whether a comment constitutes a comment on a defendant's silence.")). Moore argued that under Florida's standard, the trial court's comment was error. (*Id*. at 6-8). Although Moore maintained that the error was "fundamental," that argument addressed a matter of state law. Under

Page 12 of 33

Florida law, when the appellant fails to timely raise an issue at the trial level, the appellate court does not review the issue unless fundamental error occurred. *See State v. Crofoot*, 97 So. 3d 866, 868 (Fla. 1st DCA 2012) ("Absent fundamental error, appellate courts do not review arguments unless the appellant timely raised the issue at the trial level."). Moore argued that the error could not be deemed harmless because the State could not establish beyond a reasonable doubt that it did not affect the jury's verdict. (Ex. B5 at 6-8).

Moore's appellate brief for his direct appeal did not mention any provision of the United States Constitution, did not identify any federal standard, and did not cite a single federal case. Moore, therefore, did not fairly present the state court with a federal constitutional claim. *See, e.g., French*, 790 F.3d at 1270-71 (holding that habeas petitioner did not fairly present his claims that the trial court's exclusion of evidence violated his rights under the Confrontation Clause of the Sixth Amendment, where his state court direct appeal brief presented the issue as a purely state law claim); *McNair*, 416 F.3d at 1301 (holding that habeas petitioner did not fairly present his claim that his federal constitutional rights were violated when the jury improperly considered extraneous evidence during its deliberations, where his state court direct appeal brief couched the claim in terms of state law). Accordingly,

Moore's present claim that the trial court's comment violated federal constitutional standards was not exhausted in his direct appeal.

The same conclusion applies to Moore's postconviction proceeding. Moore's Rule 3.850 motion raised six grounds of ineffective assistance of trial counsel, but no claims of trial court error. (Attach. 2, Ex. C1 at 3-34). A substantive challenge to the trial court's comment is not the same as an ineffective assistance of trial counsel claim based on counsel's failure to object to the comment. The two are separate and distinct for habeas exhaustion purposes. *Pietri v. Fla. Dep't of Corr.,* 641 F.3d 1276, 1289 (11th Cir. 2011) (holding that habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim; the two claims were "separate and distinct" for purposes of the federal habeas exhaustion requirement); *Lefroy v. Sec'y for Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005) (noting that a substantive claim is "separate and distinct" from an ineffective assistance claim based on the substantive claim); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (distinguishing an ineffective assistance claim based on counsel's failure to object to a jury instruction from a substantive due process claim challenging the trial court's instruction of the jury).

Because Moore did not fairly present to the state courts his federal claim that the trial court's comment violated the Constitution, the claim is unexhausted and procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848 (holding that a claim which was not properly exhausted in state court and which no longer can be litigated under state procedural rules is procedurally defaulted). Moore makes none of the requisite showings to excuse his procedural default. Moore's procedural default bars habeas review of Ground One.

> **Ground Two**     **"The Conviction Was Obtained in Violation of 5th, 6th, 14th Amend.'s to U.S. Const. When Counsel Failed to Make Contemporaneous Objection Rule, and Move the Court for Curative Instruction or for Mistrial Based Upon State's Witness Notice of Prior Arrests and Failure to Testify." (Doc. 1 at 9-10).**

> **Ground Three**     **"The Conviction Was Obtained in Violation of the 6th and 14th Amendment's to U.S. Const. When Trial Counsel Failed to Make Contemperaneous Objections, Continuing Objections, to State's Introduction of Hearsay Speculative Evidence and Motion the Court for Curative Instructions or/and, Mistrial." (Doc. 1 at 11-12).**

Moore's second and third claims concern the same body of testimony, so the undersigned addresses them together. Moore claims that defense counsel was ineffective for failing to object and request a curative instruction or mistrial when Investigator Roberts described a photo lineup:

A [Investigator Roberts]: Photo lineup is a lineup of individ—possible suspect as one of the, one of the six people and is basically prepared by either using driver's license photos or either former arrest photos of, of different suspects with the same characteristics, same gender, race, same hair length, based on the descriptions you get from witnesses or a victim.

(Attach. 1, Ex. B3 at 96-97). Moore claims that Roberts's testimony was objectionable, but does not explain why. (Doc. 1 at 9).

Moore also faults counsel, in both Grounds Two and Three, for failing to object to Investigator Roberts's testimony concerning preparation of his incident report. The incident report came up during cross-examination. Defense counsel, Mr. Marshman, asked Roberts about his physical description of Moore, using the incident report to refresh Roberts's recollection. (Attach. 1, Ex. B3 at 103). Defense counsel then confirmed with Roberts that his report described Moore as being six feet in height, 239 pounds, and clean shaven. (*Id*. at 104).

On redirect-examination, the prosecutor, Mr. Mutz, elicited the following testimony that Moore claims was improper (as italicized):

Q [Prosecutor Mutz]: Investigator Roberts, the information that you put at the top of the report that would indicate a suspect's date of birth, sex, race, so forth, height, weight, where do you get that information from?

A [Investigator Roberts]: *It could come from several different places. The original or primary officer that responded to the scene, he could obtain that information from a witness or a victim and add it to the report.* And it's sometimes—

Page 16 of 33

MR. MARSHMAN:  Your Honor, I'm going to object to speculation at this point.

THE COURT:  Do you need a sidebar?

MR. MARSHMAN:  I've stated my grounds.

MR. MUTZ:  I don't think we need a sidebar but the defense inquired about it, and we're just following up where the information came from.

THE COURT:  If he knows.

MR. MUTZ:  Okay.

(Attach. 1, Ex. B3 at 105). The prosecutor then asked Roberts more generalized

questions, based on his experience, concerning preparation of reports:

BY MR. MUTZ:

Q:  Let me, let me rephrase the question. Could that information sometimes come from driver's license information?

A:  Some of it, yes.

Q:  Okay. So if a person obtained their driver's license and reported their height as six feet, that could go into the report?

A:  Yes.

Q:  And if somebody, like the photographs we talked about earlier, somebody lost weight after they obtained a driver's license, could that be reflected in the report when you enter information?

A:  No.

Q:  So let me, let me phrase that a little bit differently. The driver's license weight information could end up in the report; is that correct?

A:  Yes.

Q:  So if their weight changed, it could be a discrepancy?

A:  Yes.

Q:  And, Investigator Roberts, when, when a suspect is actually arrested at the time you do the report, do you, do you have an opportunity to put the updated information in the report:

A:  Yes.

Q:  Okay. In this case, when you first wrote your report, was that before the defendant was actually arrested in this case?

A:  Yes.

Q:  And were you able, at the time you wrote your report, to actually look at him, take into account his, his height and weight based on your own personal observations?

A:  No.

(Attach. 1, Ex. B3 at 105-07).

On re-cross, defense counsel asked Roberts specifically about the report he prepared in this case. That questioning elicited the following testimony, which Moore claims was improper (as italicized):

Q [Defense Counsel Mr. Marshman]:  Hello, again, Investigator Roberts. So I want to be clear on something we talked about on redirect. You were the primary investigator in this case, right?

Page 18 of 33

A: Yes.

Q: Okay. You filled out at least an incident report in relation to this case, right?

A: Yes.

Q: Okay. And in that incident report, you included the details, the information you used when investigating this case.

A: Yes.

Q: Now you're saying that those details you included in your report, you don't know where some of those came from.

MR. MUTZ [Prosecutor]: Objection, asked and answered previously and a mischaracterization of with [sic] witness' testimony.

THE COURT: Overruled.

THE WITNESS: Repeat the question.

BY MR. MARSHMAN:

Q: Okay. You were the primary investigator in this case.

A: Yes.

Q: You filled out a report in this case?

A: Yes.

Q: Okay. And it's your job to be thorough?

A: Yes.

Q:  To include the details, the information you used in your investigation?

A:  Yes.

Q:  Now your [sic] saying today, when Mr. Moore is on trial, you don't know where some of that information in your report came from?

A:  I don't recall but generally when—

Q:  I'm not asking generally, I'm saying—

MR. MUTZ [Prosecutor]:  Objection, Your Honor—

BY MR. MARSHMAN:

Q:  —this case.

MR. MUTZ:  —he's not letting the witness answer the question that he's asked.

THE COURT  Okay. Let him finish, Mr. Marshman.

THE WITNESS:  *In, in some cases, the information can come from, like, the JIS information from past arrests or from DAVID photos, as stated, or DAVID information.*

MR. MARSHMAN:  I'm going to object. Witness is nonresponsive.

MR. MUTZ: Your Honor, he's answer—

THE COURT:  Well—

MR. MUTZ:  —he's trying to answer the question.

THE COURT:  Can you rephrase your question, Mr. Marshman?

BY MR. MARSHMAN:

Q:  In this case, when you were chasing Mr. Moore, you don't know where all of the details your report about Mr. Moore came from, do you:

A [Investigator Roberts]:  In this case, when I located the vehicle matching that description—

Q:  Investigator Roberts—

A:  May I finish?

Q:  —it's a yes or no question. Yes or no.

. . . .

A:  If I'm allowed to explain—it's not a yes or no question. I can't just answer that question yes or no, Your Honor.

MR. MARSHMAN:  Judge, I'm going to ask that you direct the witness to answer this question yes or no. It's a simple yes or no question. Does he know where these details that I've specifically listed came from?

THE COURT:  Can you answer that yes or no?

THE WITNESS:  Well, I obtained information from different areas, Your Honor. And it's all—

THE COURT:  Well, we're talking about height, weight. Do you – can you answer that yes or no? Do you know where they came from, specifically, or not?

THE WITNESS: I don't recall where I, I got those characteristics from.

MR. MARSHMAN:  Okay. That's all I've got. Thank you.

(*Id.* at 109-15).

Moore claims that defense counsel was ineffective because he failed to object, request a curative instruction and move for a mistrial on the grounds that Roberts's testimony (the two statements italicized above) was speculative and hearsay.

The parties agree that Moore presented Grounds Two and Three to the state court in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Moore briefed the issues in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 9-13; Doc. 18 at 11-12). The State asserts that Moore is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 18 at 25-30).

### A.    Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### B.    Section 2254 Review Of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Moore's claims, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the

claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's rationale and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

Moore presented these claims as Grounds Two and Three of his Rule 3.850 motion. The state circuit court correctly identified *Strickland* as the controlling legal standard, (Attach. 2, Ex. C1 at 41), and denied relief for these reasons:

## Ground Two

Defendant alleges counsel was ineffective for failing to object to, move for a curative instruction on, and move for a mistrial based on Inv. Roberts' testimony regarding Defendant's "former arrest photos." When discussing the photo lineup procedure, Inv. Roberts testified that the lineup includes a photo of the possible suspect and "is basically prepared by either using driver's license photos *or* either former arrest

photos of, of different suspect with the same characteristics" as the description provided by witnesses or a victim. *Id. at 96-97* (emphasis added). Defendant claims that this mention of former arrest photos led the jury to believe that he had been arrested in the past. However, Inv. Roberts did not say that *only* former arrest photos are used, but that driver's license photos *or* former arrest photos are used. Accordingly, the jury could just have easily assumed that Defendant's driver's license photo was used in the lineup, a fact buttressed by later questioning by the State specifically referring to driver's license photos being used in the lineup. *Id. at 98-99*.

Defendant also notes that Inv. Roberts later testified that the information which appears on the police incident report "*in some cases* . . . can come from, like, the JIS information from past arrests or from DAVID photos, as stated or DAVID information." *Id. at 105-11* (emphasis added). Defendant claims this invited the jury to infer guilt against the Defendant. After the latter statement, a sidebar was held and then questioning was permitted to continue, with no further mention of possible former arrests and concluding with the witness admitting that he did not know where the information actually came from in this case. *Id. at 112-14*.

The Court finds that these two statements were equivocal enough that the jury was not led to believe that Defendant's lineup photo was a former arrest photo, or that the information on the incident report came from past arrests, especially given that Inv. Roberts admitted he did not know where the information came from. Therefore, there was no reason to object, request a curative instruction, or move for a mistrial. Defendant has failed to show deficient performance or prejudice and Ground Two is denied.

## **Ground Three**

Defendant alleges counsel was ineffective for failing to request a curative instruction or move for a mistrial after objecting to the introduction of inadmissible speculative evidence through the testimony of Inv. Ronald Roberts. The objection occurred during the State's [re]direct examination of Inv. Roberts, when the prosecutor was

asking the witness where he obtained the information about Defendant that he included in the police incident report. *Id. at 105-14*. When Inv. Roberts replied that the information could have come from several different sources, defense counsel objected to the witness's speculation. *Id. at 105*. As shown by the record, while the Court did not expressly rule on the objection, the questioning became much more specific and resulted in the witness finally admitting that he did not know where the information came from. *Id. at 105-14*. Contrary to Defendant's assertion, speculative evidence was not actually introduced, and the Court finds it highly unlikely that the testimony "allow[ed] the jury to consider the speculation statement as evidence of Mr. Moore's guilt." There was no meritorious reason for counsel to move for an unnecessary curative instruction or move for a mistrial. Because Defendant has not shown deficient performance or prejudice, Ground Three is denied.

(Ex. C1 at 42-44).

This court defers to the state court's factual findings, because they are amply supported by the record and because Moore has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)).

Based on the state court's findings, which properly captured the totality of the circumstances, the state court's rejection of Moore's claims was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Defense counsel's

strategic management of Roberts's testimony was reasonable, and Moore failed to establish that there was a substantial likelihood the result of his trial would have been different had counsel requested a curative instruction or moved for a mistrial. *See Richter*, 562 U.S. at 112 (clarifying that the likelihood of a different outcome must be "substantial, not just conceivable"); *see also Meders v. Warden, Georgia Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained."); *Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that the petitioner could not possibly have suffered *Strickland* prejudice where the objection that was not made would have been futile); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief"). Moore is not entitled to habeas relief on Grounds Two and Three.

<u>**Ground Four**</u>         **"The Conviction Was Obtained in Violation of the 5th, 6th, and 14th Amend's to U.S. Const. When Counsel Failed to Move the Court for Curative Instructions and/or for Mistrial When the Court Commented on Petitioner's Silence or Failure to Testify." (Doc. 1 at 14-15).**

Moore claims that defense counsel was ineffective for failing to request a curative instruction or move for a mistrial when the trial court referenced "the defendant," instead of "the defense," when introducing closing arguments. Moore

claims he was prejudiced by counsel's omission because he was deprived of appellate review of the issue. (Doc. 1 at 14-15). Moore asserts that he exhausted this claim by raising it in his Rule 3.850 proceeding as Ground Four of his postconviction motion. (*Id*. at 14-16). The State asserts a procedural default defense based on Moore's abandonment of this claim in his postconviction appeal. (Doc. 18 at 12-14).

### A.    Moore's Claim is Procedurally Defaulted

To satisfy the exhaustion requirement, the petitioner must fairly present his federal claim to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan*, 526 U.S. at 845. Moore failed to present this ineffective assistance claim to the First DCA in his postconviction appeal and, therefore, procedurally defaulted.

Moore's Rule 3.850 motion raised a total of six claims. (Attach. 2, Ex. C1). Moore presented this ineffective assistance claim as Ground Four. (*Id*. at 22-27). The state circuit court summarily denied relief on the merits. (*Id*. at 44). Moore appealed the decision to the First DCA, and chose to file an initial brief. (Ex. C2). Moore, however, did not argue error with regard to the lower court's denial of Ground Four (counsel's failure to object to the trial court's alleged comment on his silence). (*Id*.). Moore only sought appellate review of Grounds One, Two, Three, and Six of his postconviction motion. (*Id*.).

In the First DCA, an appellant who files a brief when appealing a summarily denied postconviction motion must raise and fully address in his brief all arguments on which he seeks appellate review. Claims that are not briefed are not reviewed. *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008) (holding that an appellate court "may review only those arguments raised and fully addressed in the brief"); *see also Roderick v. State*, 284 So. 3d 1152, 1154 (Fla. 1st DCA 2019) (holding that three of defendant's seven postconviction claims were not subject to appellate review because the defendant did not argue them in his brief) (citing *Watson*, 975 So. 2d at 573).[5]

---

[5] If an appellant does <u>not</u> file a brief when appealing a summarily denied postconviction motion (which is not the case here), the appellate court is required to investigate all possible means of relief. *Watson*, 975 So. 2d at 573 n.1; *see also* Fla. R. App. P. 9.141(b)(2).

In the past, the Eleventh Circuit interpreted Florida law differently. In two unpublished decisions issued in 2007, the Eleventh Circuit held that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to all claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief. *See Darity v. Sec'y, Dep't of Corr.*, 244 F. App'x. 982, 984 (11th Cir. 2007); *Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007). However, the Florida case upon which the Eleventh Circuit relied in *Darity* and *Cortes*, that is, *Webb v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000), ceased to be the decisional law of the Fifth DCA in 2009. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009); *see also Maxwell v. State*, 169 So. 3d 1264, 1265 n.1 (Fla. 5th DCA 2015) (holding, in a postconviction appeal where the lower court summarily denied relief without evidentiary hearing, that the defendant abandoned two of his three grounds by failing to raise them in his appellate brief) (citing *Ward*, 19 So. 3d at 1061).

Moore's failure to appeal the denial of Ground Four (counsel's failure to object to the trial court's alleged comment on his silence), renders the claim procedurally defaulted for federal habeas purposes. Moore makes none of the requisite showings to excuse his procedural default. Moore's procedural default bars habeas review of Ground Four.

## IV.    Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"

*Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Willie E. Moore*, Leon County Circuit Court Case No. 2013-CF-1076, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>17th</u> day of April, 2020.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**